2019 UT App 94

## THE UTAH COURT OF APPEALS

JEREMY FERRE,
Appellant,
*v.*
SALT LAKE CITY AND
SILVERHAWK ENTERPRISES INC.,
Appellees.

Opinion
No. 20180236-CA
Filed May 31, 2019

Third District Court, Salt Lake Department
The Honorable Sandra N. Peuler
No. 170904485

Scott O. Mercer and James Adam Knorr, Attorneys
for Appellant

Margaret D. Plane, Paul Nielson and Allison
Elizabeth Parks, Attorneys for Appellee
Salt Lake City

Ryan B. Braithwaite and Daniel K. Brough, Attorneys
for Appellee Silverhawk Enterprises Inc.

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES KATE APPLEBY and RYAN M. HARRIS concurred.

HAGEN, Judge:

¶1      Homeowner Jeremy Ferre challenges a special exception granted by the Salt Lake City Planning Commission (the Commission), allowing the construction of a two-story house on a neighboring lot that exceeded the Salt Lake City Code's maximum height allowance. Ferre appealed the Commission's decision to the Salt Lake City Land Use Appeals Hearing Officer (the Hearing Officer), arguing, in part, that the Commission's decision was illegal because the Commission did not make the

required finding that the proposed exception was "in keeping with the development pattern of the block face."[1] The Hearing Officer upheld the Commission's decision, and on judicial review, the district court granted summary judgment in favor of Salt Lake City, upholding the Commission's decision. Ferre now appeals the district court's ruling, arguing that the Commission's decision was illegal as a matter of law because the property was not located on a "block face" as defined by the ordinance and, therefore, could not be "in keeping with the development pattern of the block face."

¶2    We conclude that the requirement that the special exception be consistent with the development pattern of the block face is inapplicable where the property at issue is not located on a block face. Instead, the Commission properly considered the characteristics and existing structures in the neighborhood to determine whether the additional height was in keeping with the regulatory purpose of the zoning ordinances. Accordingly, we affirm the district court's grant of summary judgment in favor of Salt Lake City.

BACKGROUND

¶3    Silverhawk Enterprises Inc. began construction of a house on the lot located directly south of Ferre's property. Both lots are zoned in a "single- and two-family residential district." *See* Salt Lake City, Utah, Code § 21A.24.110. The property at issue is "uniquely situated" and accessed "by a long driveway and multiple easements" from the "block face" street on which Ferre's property is located. Silverhawk obtained a construction

---

1. A "block face" is defined as "[a]ll of the lots facing one side of a street between two (2) intersecting streets. . . . In no case shall a block face exceed one thousand feet (1000')." Salt Lake City, Utah, Code § 21A.62.040.

permit to build a three-story pitched-roof house, but after pouring the foundation and beginning to frame the house, Silverhawk discovered that it did not dig the foundation deep enough. As a consequence, Silverhawk needed to modify the height of the house to comply with the Salt Lake City Code. Silverhawk consulted the relevant homeowners' association to determine whether it would be better to seek a special exception for additional height for a three-story, pitched-roof house or for additional height for a two-story, flat-roof house. "[A]t the request" of the homeowners' association, "Silverhawk incorporated a flat roof [construction plan] . . . on the rationale that a flat roof would have less visual impact on [neighboring] views." The revised construction plans proposed a maximum building height of twenty-nine feet and eight inches, which is one foot and eight inches more than permitted for a pitched-roof house and nine feet and eight inches more than permitted for a flat-roof house. *See id.* § 21A.24.110(D). Silverhawk submitted a special exception application to the Commission for the additional height.

¶4 The Salt Lake City Code provides exceptions to building height restrictions when certain criteria are met. *See id.* § 21A.52.060. The Commission's senior planner reviewed the application and issued a report, concluding that the relevant criteria were met and recommending that the Commission approve the application subject to certain conditions.[2] The senior planner's report provided that, although the house was "not directly located on the 'block face,'" *see id.* § 21A.24.110(D)(6)(a), the request for "additional building height complies with the regulatory intent of Chapter 21A.24" of the Salt Lake City Code, which ensures that the special exception is "compatible with the existing scale and intensity of the neighborhood," *see id.* § 21A.24.110(A).

---

2. The recommended conditions are not at issue on appeal and we therefore do not recite them.

¶5     The Commission held a public hearing to allow surrounding property owners to provide commentary and lodge objections to the special exception application. At the hearing, Ferre, his attorney, and his brother spoke and objected to the application, arguing that the house would impair Ferre's view and that the Commission should "enforce the ordinance" that requires flat-roof buildings to not exceed twenty feet in height.

¶6     Over Ferre's objections, the Commission granted the special exception application subject to the senior planner's conditions. Ferre appealed the Commission's decision to the Hearing Officer and sought a stay of construction.[3] Relevant to this appeal, Ferre "argued that there was insufficient evidence for [the Commission] to find that the [special exception

---

3. The Hearing Officer did not respond to the request for a stay of construction prior to the hearing on Ferre's appeal that occurred almost six months after Ferre sought the stay. During the pendency of this appeal, Salt Lake City filed a suggestion of mootness, arguing that Ferre's appeal is moot because he did not seek a stay of construction in the administrative proceedings and the house has been built and sold to a third party. *See Wasatch County v. Utility Facility Review Board*, 2018 UT App 191, ¶ 19, 437 P.3d 406 (explaining that "the presence of the [completed construction project], coupled with [an appellant's] failure to seek a stay" renders the "proceeding for judicial review moot"). But the record shows that Ferre did request a stay of construction when he submitted his appeal to the Hearing Officer in accordance with Salt Lake City Code section 21A.52.140, distinguishing this case from *Wasatch County*. Salt Lake City has not persuaded us that this issue is moot and we therefore reach the merits of this appeal. *See Salt Lake County v. Holliday Water Co.*, 2010 UT 45, ¶ 21, 234 P.3d 1105 ("The burden of persuading the court that an issue is moot 'lies with the party asserting mootness." (quotation simplified)).

application] met the requirement of being in keeping with the development pattern on the block face."

¶7    The Hearing Officer disagreed, noting that "the Commission entertained a discussion with [the senior planner] regarding the development pattern of the block face and the basis for the [senior planner's] finding of compliance." The Hearing Officer upheld the Commission's decision, concluding that the Commission "had substantial evidence of the building design of the neighborhood, the site and the relationship of the proposed structure to its neighbors upon which it could find that the [special exception application] met the standards set forth in the Salt Lake City Code."

¶8    Ferre sought judicial review of the Hearing Officer's decision in district court. Both parties filed cross-motions for summary judgment. The district court concluded that there is "no requirement that the building be on a block fac[e] to be eligible for a special exception," and declined to disturb the Hearing Officer's decision upholding the Commission's grant of the special exception.

¶9    Ferre appeals.

ISSUE AND STANDARDS OF REVIEW

¶10    Ferre contends the district court erred in granting summary judgment in favor of Salt Lake City.[4] Summary judgment is appropriate when "there is no genuine dispute as to

_____

4. Ferre also argues that the district court "err[ed] in determining that Ferre was required to marshal the evidence to demonstrate that the Commission did not comply with" the Salt Lake City Code. Salt Lake City does not contest Ferre's position regarding marshaling. Ferre's only challenge on appeal is a purely legal question.

any material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a). On appeal from a district court's review of an administrative agency's decision, "we afford no deference to the [district] court's decision and apply the statutorily defined standard to determine whether the court correctly determined whether the administrative decision was arbitrary, capricious, or illegal." *McElhaney v. City of Moab*, 2017 UT 65, ¶ 15, 423 P.3d 1284 (quotation simplified).

ANALYSIS

¶11  Under Utah law, a municipality's land use decisions are accorded a great deal of deference. *See Baker v. Park City Mun. Corp.*, 2017 UT App 190, ¶ 16, 405 P.3d 962. A reviewing court must "presume that a final decision of a land use authority or an appeal authority is valid" and must uphold the decision unless it is "(A) arbitrary and capricious; or (B) illegal." Utah Code Ann. § 10-9-801(3)(b)(ii) (LexisNexis Supp. 2018). Here, Ferre contends that the decision to grant the special exception was illegal because the Commission did not strictly comply with the relevant provisions of the Salt Lake City Code. Specifically, Ferre argues that the Commission did not, and could not, make a finding that the additional building height allowed by the special exception was "in keeping with the development pattern on the block face." *See* Salt Lake City, Utah, Code § 21A.24.110(D)(6).

¶12  The Salt Lake City Code allows the Commission to grant a special exception for additional building height when certain conditions are met. *Id.* § 21A.52.060(A)–(G). In addition to meeting the seven general standards in chapter 21A.52, which are not at issue in this case, the Commission must also determine that the additional building height "is in keeping with the development pattern on the block face." *Id.* § 21A-24-110(D)(6). "Block face" is defined as "[a]ll of the lots facing one side of a street between two (2) intersecting streets. Corner properties shall be considered part of two (2) block faces, one for each of the

two (2) intersecting streets. In no case shall a block face exceed one thousand feet (1,000')." *Id.* § 21A.62.040.

¶13 Here, the property is not located on a block face. Instead, it "is uniquely situated . . . on a steep grade sloping to the south," directly south of Ferre's house, which can be accessed from the "block face" street "by a long driveway and multiple easements." Because the property is not on a block face, the Commission considered whether the additional height would be compatible with the surrounding neighborhood in accordance with the regulatory intent of chapter 21A.24 of the Salt Lake City Code. *See id.* § 21A.24.110(A) ("Uses [under this chapter] are intended to be compatible with the existing scale and intensity of the neighborhood. The standards for the district are intended to provide for safe and comfortable places to live and play and to promote sustainable and compatible development patterns."). Ferre argues that this was error and the Commission instead should have denied the special exception application "as a matter of law" because there is no relevant block face. Under Ferre's interpretation of zoning ordinances 21A.24.110(D)(2) and (D)(6), a special exception for additional height can never be approved if the building at issue is not located on a block face. We reject this interpretation.

¶14 "The fundamental consideration in interpreting legislation, whether at the state or local level, is legislative intent." *Springville Citizens for a Better Community v. City of Springville*, 1999 UT 25, ¶ 29, 979 P.2d 332. "The best evidence of the legislature's intent is the plain language of the statute [or ordinance] itself." *Marion Energy Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863 (quotation simplified). "We read the plain language of the [ordinance] as a whole and interpret its provisions in harmony with other [ordinances] in the same chapter and related chapters." *See LPI Services v. McGee*, 2009 UT 41, ¶ 11, 215 P.3d 135 (quotation simplified); *see also Patterson v. Utah County Board of Adjustment*, 893 P.2d 602, 606 (Utah Ct. App. 1995). But when a statute or ordinance is silent as to the

circumstances presented "and we determine that such a gap was not the intent of the [legislative body], we must determine the best rule of law to ensure that the statute is applied uniformly." *Cox v. Laycock*, 2015 UT 20, ¶¶ 41–42, 345 P.3d 689 (quotation simplified). We therefore "analyze the [ordinance] in its entirety and harmonize its provisions in accordance with the legislative intent and purpose." *Id.* ¶ 42 (quotation simplified).

¶15   The ordinance at issue here provides that "additional building height may be granted as a special exception by [the Commission] subject to the special exception standards in chapter 21A.52 of this title and if the proposed building height is in keeping with the development pattern on the block face." Salt Lake City Code § 21A.24.110(D)(6)(a). That provision is silent as to whether a special exception for building height may be granted where no determination can be made as to whether "the proposed building height is in keeping with the development pattern on the block face" because the property at issue is not located on a block face. Nor is there a separate provision that would address such a situation. We therefore look to the chapter as a whole to discern the legislative intent of the ordinance.

¶16   The "Statement of Intent" of chapter 21A.24 of the Salt Lake City Code provides:

> The residential districts are intended to provide a range of housing choices to meet the needs of Salt Lake City's citizens, to offer a balance of housing types and densities, to preserve and maintain the City's neighborhoods as safe and convenient places to live, to promote the harmonious development of residential communities, to ensure compatible infill development, and to help implement adopted plans.

*Id.* § 21A.24.010(A). Further, the "Purpose Statement" under ordinance 21A.24.110(A), which governs the properties and

ordinance at issue in this case, provides: "Uses are intended to be compatible with the existing scale and intensity of the neighborhood. The standards for the district are intended to provide for safe and comfortable places to live and play and to promote sustainable and compatible development patterns." *Id.*

¶17 In applying this statutory scheme, we are mindful of Utah's long-standing principle that "because zoning ordinances are in derogation of a property owner's common-law right to unrestricted use of his or her property, provisions therein restricting property uses should be strictly construed, and provisions permitting property uses should be liberally construed in favor of the property owner." *Patterson*, 893 P.2d at 606. Because chapter 21A.24 allows a property owner to seek an exception to otherwise applicable land use restrictions, we must "liberally construe" the chapter "in favor of the property owner" seeking a special exception. *See id.*

¶18 If we were to read ordinance 21A.24.110(D)(6)(a) to categorically exclude all buildings that are not on a "block face," as Ferre asks us to do, property owners like Silverhawk would be foreclosed from seeking reasonable land use exceptions available to other property owners even when the exception is compatible with existing development. Such an interpretation would be inconsistent with the regulatory purpose of chapter 21A.24 and our long-standing principle to favor the property owner seeking a special exception. *See* Salt Lake City, Utah, Code §§ 21A.24.010(A), 21A.24.110(A); *see also Patterson*, 893 P.2d at 606. We therefore conclude that such a categorical exclusion was not intended. *See Cox*, 2015 UT 20, ¶¶ 44–46.

¶19 Instead, we read 21A.24.110(D)(6)(a) as requiring the Commission to find that the proposed additional height of a building is consistent with the development pattern of the block face only when the building is actually located on a block face. *See* Salt Lake City, Utah, Code § 21A.24.110(A), (D). When a building is not located on a block face, such a determination

would be impossible and the Commission can, as it did here, consider "the existing development in the surrounding neighborhood" to determine whether the additional height would be in keeping with the regulatory purpose of chapter 21A.24.

¶20 Although the ordinance is silent as to the challenge Ferre raises on appeal, we reject his argument that chapter 21A.24 of the Salt Lake City Code is intended to categorically exclude special exceptions for buildings not located on a block face. Given that the property at issue was not located on a block face, we conclude the Commission properly considered the characteristics and existing development of the neighborhood when it granted the special exception.

CONCLUSION

¶21 The district court correctly determined that the decision to grant the special exception application was legal because it complied with the requirements of the Salt Lake City Code. We therefore affirm the district court's grant of summary judgment in favor of Salt Lake City.

––––––––––